UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

MICHAEL E. VANDERMARLIERE, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

PNC BANK, N.A,

Defendant.

Case No. 2:22-cv-12862

## CLASS ACTION COMPLAINT

**NOW COMES** MICHAEL E. VANDERMARLIERE ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through his undersigned counsel, complaining of PNC BANK, N.A. ("Defendant"), as follows:

### NATURE OF ACTION

1.  This action seeks redress for Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2.  "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.*, 896 F.3d 728, 738-39 (6th Cir. 2018) *citing* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

3.  As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

1

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as the TCPA is a federal statute.

5. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

6. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant was domiciled in Pontiac, Michigan.

7. Defendant is a prominent national banking institution that provides banking and financial services to consumers nationwide.

8. Defendant maintains its principal place of business in Pittsburgh, Pennsylvania.

## FACTUAL ALLEGATIONS

9. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 6584.

10. At all times relevant, Plaintiff's number ending in 6584 was assigned to a cellular telephone service.

11. At all times relevant, Plaintiff was financially responsible for his cellular telephone services.

12. Plaintiff has been the subscriber and owner of the phone number ending in 6581 for years.

13. At all times relevant, Plaintiff did not have a business relationship with Defendant.

14. In November 2022, Defendant started placing calls to Plaintiff's cellular phone number in an attempt to reach an unknown individual by the name of "Tina Berg."

15. In the calls that Plaintiff answered, Plaintiff was greeted with a prerecorded message ("prerecorded greeting") stating: "Hi, this is PNC, we are calling from loss prevention for Tina Berg, please have your card number ready."

16. The prerecorded greeting was followed by music and then another prerecorded message stating: "We are sorry for the hold. Your business is very important to us, please stay on the line."

17. It was clear to Plaintiff that Defendant's calls utilized an artificial voice and/or prerecorded message ("robocalls") because: (1) all calls contained the identical message; and (2) the calls were all monotone and were conspicuously not left by a live representative.

18. Upon information and belief, the prerecorded greeting described in Paragraph 15 is Defendant's stock greeting that it utilizes in loss prevention calls.

19. In total, Defendant placed no less than ten (10) misguided robocalls to Plaintiff's cellular phone number in November 2022, including: two (2) calls on November 9, 2022, and four (4) calls on November 12, 2022 between 10:10 a.m. EST and 11:14 a.m. EST.

20. All of Defendant's robocalls were placed from phone number (800) 225-5671.

21. In addition to the robocalls, Defendant also sent multiple "fraud alert" text messages to Plaintiff's cellular phone number in November 2022.

22. Plaintiff had no choice but to submit to Defendant's invasive robocalls and text messages.

23. At no point in time did Plaintiff provide Defendant with consent to place calls to his cellular phone number.

## DAMAGES

24. Plaintiff values his time, privacy, and solitude.

25. Defendant's misguided robocalls have invaded Plaintiff's privacy and have caused Plaintiff concrete harm, including: aggravation that accompanies unwanted robocalls, increased risk of personal injury resulting from the distraction caused by the misguided robocalls, wear and tear to Plaintiff's cellular phone, trespass upon Plaintiff's cellular phone, temporary loss of use of Plaintiff's cellular phone, loss of battery charge, loss of concentration, mental anguish, nuisance, the per-kilowatt electricity costs required to recharge Plaintiff's cellular phone as a result of increased usage of Plaintiff's telephone services, and wasting Plaintiff's time.

26. Moreover, each time Defendant placed a misguided robocall to Plaintiff's cellular phone number, Defendant occupied Plaintiff's cellular phone such that Plaintiff was unable to receive other phone calls or otherwise utilize his cellular phone while his phone was ringing.

27. Plaintiff had no choice but to submit to Defendant's invasive robocalls and text messages.

28. As a result of Defendant's invasive robocalls, Plaintiff was forced to retain counsel and file this action to compel Defendant to cease its robocalls.

## CLASS ALLEGATIONS

29. All Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

30. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All individuals residing in the United States (1) to whom Defendant placed, or caused to be placed, a call; (2) directed to a number assigned to a cellular telephone service; (3) using an artificial or prerecorded voice; (4) in attempt to contact a third party that has an existing account with Defendant; (5) within the four years preceding the date of the original complaint through the date of class certification.

31. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) Plaintiff's attorneys; (4) individuals who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors, or assigns of any such excluded individuals; and (6) individuals whose claims against Defendant have been fully and finally adjudicated and/or released.

**A.     Numerosity**

32. Upon information and belief, the members of the Putative Class are so numerous that joinder of them is impracticable.

33. The exact number of the members of the Putative Class is unknown to Plaintiff at this time, and can only be determined through targeted discovery.

34. The members of the Putative Class are ascertainable because the Class is defined by reference to objective criteria.

35. The members of the Putative Class are identifiable in that their names, addresses, and telephone numbers can be identified in business records maintained by Defendant.

**B.     Commonality and Predominance**

36. There are many questions of law and fact common to the claims of Plaintiff and the Putative Class.

37. Those questions predominate over any questions that may affect individual members of the Putative Class.

**C.     Typicality**

38. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as a result of Defendants' conduct.

### D. Superiority and Manageability

39. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

40. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

41. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

42. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

### E. Adequate Representation

43. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

44. Plaintiff has no interests antagonistic to those of the Putative Class and Defendant has no defenses unique to Plaintiff.

45. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

## CLAIMS FOR RELIEF

### COUNT I
**Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq*.)**
**(On behalf of Plaintiff and the Members of the Putative Class)**

46. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

47. Plaintiff is a "person" as defined by 47 U.S.C. §153(39) because he is an individual.

48. Defendant is a "person" as defined by 47 U.S.C. §153(39) because it is a corporation.

49. Section 227(b)(1)(A)(iii) of the TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or *an artificial or prerecorded voice*" to "any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2344 (2020) (emphasis added).

50. Defendant violated § 227 (b)(1)(A)(iii) of the TCPA by placing no less than ten (10) calls to Plaintiff's cellular phone number utilizing an artificial or prerecorded voice without Plaintiff's consent.

51. As pled above, Defendant utilized a prerecorded message that automatically played upon Plaintiff answering Defendant's calls.

52. As pled above, at no point in time did Plaintiff provide Defendant with consent to place calls to his cellular phone.

53. As pled above, Plaintiff was harmed by Defendant's unlawful robocalls.

54. Upon information and belief, Defendant does not maintain adequate policies and procedures to ensure compliance with the TCPA.

55. Upon information and belief, Defendant has failed to implement protocols or procedures to ensure that misguided calls are not placed.

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Putative Class, requests the following relief:

A. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

B. a judgment in Plaintiff's favor finding that Defendant violated 47 U.S.C. § 227 (b)(1)(A)(iii);

C. an order enjoining Defendant from placing further unlawful calls to Plaintiff and the members of the Putative Class;

D. an award of $500.00 in damages to Plaintiff and the members of the Putative Class for each violating call;

E. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each violating call; and

F. an award of such other relief as this Court deems just and proper

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Date: November 23, 2022                              Respectfully submitted,

**MICHAEL E. VANDERMARLIERE**

By: */s/ Mohammed O. Badwan*
Mohammed O. Badwan
Sulaiman Law Group, Ltd.
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8180
mbadwan@sulaimanlaw.com
*Counsel for Plaintiff*