# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICHAEL E. VANDERMARLIERE,
individually, and on behalf of others
similarly situated,

                Plaintiff,

v.

PNC BANK, N.A.,

                Defendant.

Case No. 4:22-cv-12862

Judge Shalina D. Kumar
Magistrate Kimberly G. Altman

---

Mohammed O. Badwan
*Attorneys for Plaintiff*
SULAIMAN LAW GROUP, LTD.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
(630) 575-8180
mbadwan@sulaimanlaw.com

Brett J. Natarelli
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 627-2160
bnatarelli@dykema.com

Laura C. Baucus (P56932)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304
(248) 203-0700
lbaucus@dykema.com

*Attorneys for PNC Bank, N.A.*

---

## DEFENDANT PNC BANK, N.A.'S MOTION TO COMPEL ARBITRATION AND TO STAY OR DISMISS PLAINTIFF'S COMPLAINT

Defendant PNC Bank, N.A. ("PNC"), by and through its undersigned counsel,

respectfully requests that the Court enter an order directing the Parties to arbitration,

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

and staying or dismissing Plaintiff Michael E. Vandermarliere's Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(3). In support of its Motion, PNC relies on the facts, argument, and case law contained in the accompanying Brief in Support of its Motion to Compel Arbitration and to Stay or Dismiss Plaintiff's Complaint.

Pursuant to Local Rule 7.1, counsel for Defendant spoke by telephone with Plaintiff's counsel on January 19, 2023, to explain the nature of the relief sought and the grounds for this motion. Defendant also sought Plaintiff's concurrence in this motion, but Plaintiff's counsel did not concur and stated he opposes this Motion.

Date: January 24, 2023

**DYKEMA GOSSETT PLLC**

By: */s/ Brett J. Natarelli*
Brett J. Natarelli
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 627-2160
bnatarelli@dykema.com

Laura C. Baucus (P56932)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304
(248) 203-0700
lbaucus@dykema.com

*Attorneys for PNC Bank, N.A.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHAEL E. VANDERMARLIERE,
individually, and on behalf of others
similarly situated,

        Plaintiff,

v.

PNC BANK, N.A.,

        Defendant.

Case No. 4:22-cv-12862

Judge Shalina D. Kumar
Magistrate Kimberly G. Altman

---

Mohammed O. Badwan
*Attorneys for Plaintiff*
SULAIMAN LAW GROUP, LTD.
2500 s. Highland Avenue, Suite 200
Lombard, IL 60148
(630) 575-8180
mbadwan@sulaimanlaw.com

Brett J. Natarelli
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 627-2160
bnatarelli@dykema.com

Laura C. Baucus (P56932)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304
(248) 203-0700
lbaucus@dykema.com

*Attorneys for PNC Bank, N.A.*

---

## BRIEF IN SUPPORT OF DEFENDANT PNC BANK, N.A.'S
## MOTION TO COMPEL ARBITRATION AND
## TO STAY OR DISMISS PLAINTIFF'S COMPLAINT

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................... ii

CONCISE STATEMENT OF ISSUES PRESENTED ........................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. v

I.    INTRODUCTION ........................................................................ 1

II.   BACKGROUND ......................................................................... 2

    A.   Plaintiff Signed Up for a PNC Virtual Wallet Account and Bound Himself to the Arbitration Provision Contained in PNC's Consumer Account Agreement. ................................. 2

    B.   Plaintiff Provided PNC With Prior Express Written Consent to Place Automated Calls and Send Texts Using Prerecorded Voice to his Cellular Telephone Number ................................ 5

    C.   In November of 2022, Plaintiff Sued PNC Alleging He Received Automated Phone Calls and Text Messages from PNC's Loss Prevention Department at the Cellular Number He Provided to PNC Without his Consent in Violation of the TCPA. ..................................................................... 6

III.  ARGUMENT .............................................................................. 7

    A.   The Parties Agreed to Arbitrate. ........................................ 8

    B.   Plaintiff's Claims Fall Within the Scope of the Arbitration Provision. ..................................................................... 9

    C.   Congress Intended TCPA Claims to be Arbitrable. ............. 14

    D.   This Case Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(3). ..................................................................... 15

IV.   CONCLUSION ......................................................................... 16

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-variant:small-caps">ASES</span>

*Anderson v. Crothall Healthcare Inc*.,
    No. 2:21-CV-10535, 2022 U.S. Dist. LEXIS 155053 (E.D. Mich. Aug.
    29, 2022) ..........................................................................................................16

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..........................................................................................7

*AT&T Techs. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)........................................................................................7, 8

*Big City Small World Bakery Café, LLC v. Francis David Corp*.,
    265 F. Supp. 3d 750 (E.D. Mich. 2017) .............................................................15

*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020) ...............................................................................7

*Drozdowski v. Citibank, Inc*.,
    2016 U.S. Dist. LEXIS 117015, 2016 WL 4544543 (W.D. Tenn. Aug.
    31, 2016) ..........................................................................................................14

*Ferro Corp. v. Garrison Industries, Inc*.,
    142 F.3d 926 (6th Cir. 1998) .............................................................................10

*Glazer v. Lehman Bros., Inc*.,
    394 F.3d 444 (6th Cir. 2005) .............................................................................10

*Green v. Ameritech Corp*.,
    200 F.3d 967 (6th Cir. 2000) .............................................................................15

*Hensel v. Cargill, Inc*.,
    198 F.3d 245 (published in full-text format at 1999 U.S. App. LEXIS
    26600) (6th Cir. 1999) (unpublished table decision).........................................15

*Huffman v. Hilltop Cos., LLC*,
    747 F.3d 391 (6th Cir. 2014) ................................................................ iii, 8, 14

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019).......................................................................................14

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

ii

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................................7, 14

*Pollak v. KeyBank, N.A.*,
   No. 1:19-CV-1866, 2019 U.S. Dist. LEXIS 210304 (N.D. Ohio Dec. 4,
   2019) ..............................................................................................13

*Shearson/Am. Express, Inc. v. McMahon*,
   482 U.S. 220 (1987).........................................................................14

*Simon v. Pfizer Inc.*,
   398 F.3d 765 (6th Cir. 2005) ...................................................... iii, 13

*Stout v. J.D. Byrider*,
   228 F.3d 709 (6th Cir. 2000) ............................................8, 9, 14, 15

*Traton News, LLC v. Traton Corp.*,
   528 Fed. App'x 525 (6th Cir. 2013) .................................................10

*Treinish v. BorrowersFirst, Inc.*,
   No. 1:17-CV-1371, 2017 U.S. Dist. LEXIS 145772 (N.D. Ohio Sep. 8,
   2017) ..............................................................................................14

*Watson Wyatt & Co. v. SBC Holdings, Inc.*,
   513 F.3d 646 (6th Cir. 2008) ................................................ iii, 11, 13

*Whaley v. T-Mobile, USA, Inc.*,
   No. 13-31-DLB-JGW, 2013 U.S. Dist. LEXIS 130650 (E.D. Ky. Aug.
   23, 2013) ............................................................... iii, 11, 12, 13

**RULES**

Fed. R. Civ. P. 12(b)(3)..........................................................................2, 15

**STATUTES**

47 U.S.C. §227(b)(1)(A) ..........................................................................1, 5

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

Should the Court compel arbitration of Plaintiff's claims under the Telephone

Consumer Protection Act where Plaintiff bound himself to an arbitration provision

that grants PNC the right to arbitrate *any* "Claim," and "Claims" expressly include

causes of action based on consumer protection laws that "arise out of" or "relate to"

the agreement between the parties?

Defendant Answers:   Yes

Plaintiff Answers:      No

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

In support of their Motion to Compel Arbitration, Defendant relies on the following authority, as well as the authority cited in their Brief in Support of Motion to Compel Arbitration:

- The Federal Arbitration Act, 9 U.S.C. § 1, *et seq*.

- The plain text of the Arbitration Provision that binds Plaintiff.

- *Simon v. Pfizer Inc*., 398 F.3d 765, 775 (6th Cir. 2005) ("When faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.").

- *Watson Wyatt & Co. v. SBC Holdings, Inc*., 513 F.3d 646, 650 (6th Cir. 2008) ("[W]here, as here, an arbitration clause is broadly written, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.") (quotes and citations omitted).

- *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395 (6th Cir. 2014) ("[P]laintiffs face a difficult task in rebutting the strong presumption in favor of arbitration").

- *Fazio v. Lehman Bros*., Inc., 340 F.3d 386, 396 (6th Cir. 2003) (finding that a claim "arises under" an agreement for purposes of arbitrability if it cannot be resolved without reference to the terms of that agreement).

- *Whaley v. T-Mobile, USA, Inc*., No. 13-31-DLB-JGW, 2013 U.S. Dist. LEXIS 130650 (E.D. Ky. Aug. 23, 2013) (where a plaintiff's TCPA claim could not be resolved without examining the TCPA consent language in the agreement between the parties, the dispute arose out of the agreements and thus fell within the scope of its arbitration clause).

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## I.    INTRODUCTION

When Plaintiff Michael E. Vandermarliere ("Plaintiff") opened a "Virtual Wallet" account (the "Account") with Defendant PNC Bank, N.A. ("PNC") on February 7, 2022, he became bound to an Account Agreement that governs this dispute. The Account Agreement includes (i) Plaintiff's consent to be called on the cellular phone number at issue in this action, which he provided to PNC at account opening, with prerecorded voice for non-marketing purposes, and (ii) an Arbitration Provision which allows PNC to compel arbitration of any cause of action, complaint, or claim based upon any legal theory, including consumer protection laws, statutes, or regulations, arising out of or related to the Agreement between PNC and the Plaintiff. In the Sixth Circuit, a claim "arises under" an agreement for purposes of arbitrability if it cannot be resolved without reference to the terms of that agreement. *Fazio v. Lehman Bros*., Inc., 340 F.3d 386, 396 (6th Cir. 2003).

In this lawsuit, Plaintiff alleges that he received several calls and text messages from PNC's loss prevention department regarding "fraud alerts" in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq*.) (the "TCPA"). The TCPA provides a complete defense to any such claim where the defendant obtains the "prior express written consent" of the call recipient. *See* 47 U.S.C. §227(b)(1)(A). PNC intends to raise this defense because Plaintiff provided his "prior express written consent" to be contacted as part of the same Account

Agreement between the parties. Because this dispute cannot be resolved without determining whether Plaintiff providing his number to PNC and signing the Account Agreement is legally sufficient to establish the affirmative defense of "prior express written consent," this dispute necessarily "arises under" the Account Agreement and "events leading up to [plaintiff] becoming an Account holder," *i.e.*, providing PNC with the number PNC allegedly called, and is therefore subject to the Arbitration Provision contained in the Account Agreement.

For these reasons, and those below, PNC respectfully requests that this Court grant PNC's Motion to Compel Arbitration ("Motion") and dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(3).

## II.     BACKGROUND

### A.     Plaintiff Signed Up for a PNC Virtual Wallet Account and Bound Himself to the Arbitration Provision Contained in PNC's Consumer Account Agreement.

Plaintiff signed up for a "Virtual Wallet" account with PNC on March 7, 2022, by executing and submitting an Account Registration and Agreement (the "Registration Agreement") to PNC in which he provided the telephone number at issue in this action. (**Exh. 1**, Declaration of Margaret Mason at ¶ 6, **Exh. 2**, Registration Agreement). The Registration Agreement states, in pertinent part: "By signing this Account Registration and Agreement . . . I agree to be bound by the terms and conditions of the 'PNC Virtual Wallet Fine Print: What You Need to

DYKEMA GOSSETT PLLC • 39577 Woodward Avenue, Suite 300, Bloomfield Hills, Michigan 48304

Know[.]" (Exh. 2). Accordingly, Plaintiff bound himself to the PNC's terms and conditions by signing the Registration Agreement including the "PNC Virtual Wallet Fine Print" document.

When Plaintiff signed up for his account at a PNC Branch, he was provided a written copy of the PNC Virtual Wallet Fine Print document (the "Account Agreement"). (Exh. 1 at ¶ 10; **Exh. 3**, Account Agreement). The Account Agreement provides a prominent notice on its very first page that legal claims by the accountholder will be subject to an arbitration provision (the "Arbitration Provision") in the agreement: "**PLEASE READ CAREFULLY THE ARBITRATION PROVISION LOCATED ON PAGES 13 & 14**." (bold in original). (Exh 3, p. 3 of 32).

The provision in the body of the Agreement states, in pertinent part:

> **READ THIS ARBITRATION PROVISION CAREFULLY: IT WILL IMPACT HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED.** Under the terms of this Arbitration Provision, and except as set forth below, Claims (as defined below) will be resolved by individual (and not class-wide) binding arbitration in accordance with the terms specified herein, if you or we elect it.

(Exh. 3, p. 14 (emphasis in original)). The Arbitration Provision further states: "This Arbitration Provision will apply to you and us and to your Account as of the date your Account was opened (or, if you are an existing customer, as of the date of this Agreement), unless you opt out by providing proper and timely notice as set forth

3

below." *Id*. It then provides simple instructions for accountholders to opt out of the Arbitration Provision. *Id*. at 15. Plaintiff did not provide PNC with any notice that he was opting out of the Arbitration Provision. (Exh. 1 at ¶ 13). The Account Agreement containing the Arbitration Provisions becomes binding on Plaintiff through any of several methods including "signing the signature card" or "using the account." Plaintiff signed the Signature Card which itself states that, by signing, the customer becomes bound to the Account Agreement. (Exh. 2). Plaintiff's Account Statement dated June 22, 2022, also indicates that Plaintiff used his Virtual Wallet Account for at least one transaction. (**Exh. 4**, Account Statement; Exh. 1, ¶ 11).

The Arbitration Provision broadly defines the "Claims" that are subject to arbitration as follows:

> A "Claim" subject to arbitration is any demand, cause of action, complaint, claim, asserted right, or request for monetary or equitable relief, whether past, present or future, and based upon any legal theory, including contract, tort, consumer protection law, fraud, statute, regulation, ordinance, or common law, which arises out of or relates to this Agreement, your Account or Accounts, the events leading up to your becoming an Account holder (for example, advertisements or promotions), any feature or service provided in connection with your Account or Accounts, or any transaction conducted with us related to any of your Accounts.

(Exh. 3 at p.14). The Arbitration Provision also states that PNC or the Plaintiff "may elect to arbitrate any Claim" by giving the other written notice of its election, which may be "asserted in papers filed within the lawsuit (for example, a motion by the

defendant to compel arbitration of Claims asserted by the Plaintiff in a lawsuit filed in court)." *Id*. at 14, ¶¶ a and b.

**B.    Plaintiff Provided PNC With Prior Express Written Consent to Place Automated Calls and Send Texts Using Prerecorded Voice to his Cellular Telephone Number.**

Under 47 U.S.C. §227(b)(1)(A), it is not unlawful to make phone calls using a prerecorded voice to persons who have given "prior express consent" to receive such calls. As part of the Account Agreement, Plaintiff provided PNC with his prior express written consent to contact him by phone call and text at the cellular telephone number he voluntarily provided to PNC in his Registration Agreement. The Account Agreement states, in pertinent part:

> By providing telephone number(s) to us, now or at any later time, you authorize PNC and its affiliates and designees to contact you regarding your account(s) with PNC and its affiliates at such numbers using any means, including but not limited to placing calls using an automated dialing system to cell, VoIP or other wireless phone number, or by sending prerecorded messages or text messages, even if charges may be incurred for the calls or text messages.

(Exh. 3, p. 11). Page 32 of the Account Agreement also states, as the last item on the last page:

> If, at any time, you provide to PNC Bank, its affiliates or designees (PNC) contact numbers that are wireless telephone number(s) including, but not limited to, cell or VoIP numbers, you are consenting to PNC using an automated dialing system to call or text you, or to send prerecorded messages to you, in order to service, and

DYKEMA GOSSETT PLLC • 39577 Woodward Avenue, Suite 300, Bloomfield Hills, Michigan 48304

collect on, any PNC personal account(s) and business
account(s) (for which you are an authorized signer,
guarantor or designated contact person) but not to market
to you.

As part of the Registration Agreement Plaintiff provided to PNC, Plaintiff
voluntarily provided PNC with his cellular telephone number—the same number at
which Plaintiff claims to have received the allegedly violative calls and texts from
PNC that are the subject of his TCPA claims. (*See* Exh. 2, number ending 6584, and
Complaint ¶¶ 9-10, alleging Plaintiff received calls at number ending in 6584).

**C.     In November of 2022, Plaintiff Sued PNC Alleging He Received
         Automated Phone Calls and Text Messages from PNC's Loss
         Prevention Department at the Cellular Number He Provided to
         PNC Without his Consent in Violation of the TCPA.**

Plaintiff alleges that in November of 2022 he received several automated calls
using a prerecorded voice from PNC's loss prevention department to the cellular
phone number he provided to PNC in his Registration Agreement while attempting
to reach another customer, Tina Berg. (*See* Complaint, ¶¶ 9-12, 14-19; Exh. 2).
Plaintiff also alleges that, in November of 2022, he received several text messages
sent by PNC to his cellular telephone number regarding a "fraud alert." (*See*
Complaint, ¶ 21). Notwithstanding the Registration Agreement, Plaintiff claims that:
"At no point in time did Plaintiff provide Defendant with consent to place calls to
his cellular phone number." *Id*. at ¶ 23.

## III.   ARGUMENT

Pursuant to the terms of the Account Agreement between Plaintiff and PNC, "the Federal Arbitration Act governs the interpretation and enforcement of [the] Arbitration Provision." (Exh. 3, p. 15). "The Federal Arbitration Act reflects the basic principles that arbitration is a matter of contract and that contracts must be enforced according to their terms." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (quotes and citation omitted). It was enacted in response to "judicial hostility to arbitration agreements" and codifies a "'liberal federal policy favoring arbitration.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Consistent with this strong federal policy in favor of arbitration, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Also consistent with this policy, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). "Doubts should be resolved in favor of coverage," and this

presumption in favor of arbitrability "is particularly applicable where," as here, "the clause is . . . broad . . ." *Id.* Plaintiff's burden to rebut the presumption of arbitrability is a "difficult task." *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395 (6th Cir. 2014).

Viewed with this presumption of arbitrability in mind, the Sixth Circuit applies a four-prong test to determine whether a motion to compel arbitration should be granted. "[F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Each prong has been met here as discussed below.

## A.    The Parties Agreed to Arbitrate.

As to the first prong, a valid arbitration agreement exists between Plaintiff and PNC. As explained above, when Plaintiff signed up for his "Virtual Wallet" account with PNC by signing and submitting the Registration Agreement, Plaintiff agreed: "By signing this Account Registration and Agreement . . . I agree to be bound by the terms and conditions . . . that may apply to my PNC Bank account." (Exh. 2). Those "terms and conditions," which are contained in Plaintiff's Account Agreement, contain the Arbitration Provision, which, by its own terms, became effective "as of

the date [Plaintiff's] Account was opened[,]" (Exh. 3, p. 14) unless Plaintiff notifies PNC that he is opting out of the Arbitration Provision, which Plaintiff did not (*see* Exh. 1 at ¶ 13). The Arbitration Provision gives PNC the right to "elect to arbitrate any Claim." (Exh. 3, p. 14, ¶ a). Therefore, the parties are subject to a valid arbitration agreement.[1]

### B.    Plaintiff's Claims Fall Within the Scope of the Arbitration Provision.

The next question is whether Plaintiff's TCPA claims against PNC fall within the scope of the Arbitration Provision to which the Plaintiff is bound. *Stout*, 228 F.3d at 714. The answer is yes. The Arbitration Agreement is broadly drafted. It requires arbitration of any "cause of action [or] complaint" which is "based upon any legal theory, including" those arising under "consumer protection law" or "statute," and "which arises out of or relates to" the Account Agreement, Plaintiff's Account, the "events leading up to [Plaintiff] becoming an Account holder[,]" and "any feature or service provided in connection with" Plaintiff's Account.[2] (Exh. 3, p. 14). A

---

[1] PNC anticipates that Plaintiff may argue he is not subject to the Arbitration Provision because he closed his PNC Account, thereby terminating the Account Agreement between the parties, prior to receiving the allegedly violative calls and texts from PNC. However, the Arbitration Provision contains a "Survivability Clause," which states, in pertinent part: "This Arbitration Provision shall survive . . . the closing of your Account and the termination of any relationship between us, including the termination of the Agreement . . . ." (Exh. 3, p. 15). Therefore, Plaintiff's TCPA claims are still subject to the Arbitration Provision.

[2] Importantly, the Arbitration Provision not only defines "Claims" as those that "arise out of or relates to" the Account Agreement, but also that arise out of or

DYKEMA GOSSETT PLLC • 39577 Woodward Avenue, Suite 300, Bloomfield Hills, Michigan 48304

provision in which the parties agree to arbitrate all disputes "arising out of or related to" the agreement is the paradigm of a broad clause. *Traton News, LLC v. Traton Corp.*, 528 Fed. App'x 525, 528 (6th Cir. 2013). [3]

Plaintiff's Complaint (a complaint) contains only one cause of action (a cause of action) against PNC, which arises under the TCPA (a statute and a consumer protection law). This claim may only be adjudicated based on the consent language contained in the Account Agreement itself. Therefore, Plaintiff's TCPA claims fall squarely within the scope of the broadly-drafted Arbitration Provision, are precisely

---

are related to "any feature or service provided in connection with your Account" and "the events leading up to your becoming an Account holder." (Exh. 3, p. 14). Even if Plaintiff's claims do not arise out of or relate to the Account Agreement (they do), Plaintiff's claims arise out of calls and text he received from PNC's loss protection department regarding possible fraudulent activity at the number Plaintiff gave during account opening, and thus arises out of a service provided by PNC to its customers in connection with their accounts. Moreover, Plaintiff provided his cellular telephone number to PNC on the Registration Agreement (Exh. 2), which was an "event leading up to" Plaintiff "becoming an Account holder." (*See* Exh. 3, p. 14). Therefore, even if Plaintiff's claims do not arise out of or relate to the Account Agreement (they do), these are additional independent reasons why this Court should hold that TCPA causes of action are "Claims" subject to the Arbitration Provision.

[3] Indeed, similar arbitration clauses "relating to" an agreement have been widely deemed to be broadly applicable. *See*, *e.g.*, *Electrolux Home Products, Inc.*, 2008 U.S. Dist. LEXIS 61416, at *3 (construing clause requiring arbitration if a dispute "relates to this agreement" as being broadly written); *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 448-450 (6th Cir. 2005) (finding that clause requiring arbitration of "[a]ny controversy arising out of or relating to" an agreement to be broadly written); *Ferro Corp. v. Garrison Industries, Inc.*, 142 F.3d 926, 937 (6th Cir. 1998) (deeming "conspicuously broad" an arbitration clause mandating arbitration for "[a]ll controversies and claims arising out of or relating to this Agreement . . . .").

DYKEMA GOSSETT PLLC • 39577 Woodward Avenue, Suite 300, Bloomfield Hills, Michigan 48304

the type of claims the parties intended to be subject to arbitration, and none of the specific claims excluded (small claims) bear any similarity to Plaintiff's claim here. *See Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) (once an arbitration clause is deemed broadly written, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration will remove the dispute from consideration by the arbitrators.").[4]

The case of *Whaley v. T-Mobile, USA, Inc.*, No. 13-31-DLB-JGW, 2013 U.S. Dist. LEXIS 130650 (E.D. Ky. Aug. 23, 2013), is persuasive and on point. In that case, the plaintiff, a T-Mobile customer, asserted a TCPA claim against T-Mobile arising out of several calls he received from the carrier regarding a debt owed by another T-Mobile subscriber (*i.e.*, a wrong number call). *Id*. at *6. The agreement between plaintiff and T-Mobile contained a clause wherein plaintiff consented to receiving calls and texts at the number he provided to T-Mobile, and an arbitration clause, which required arbitration of "any and all claims or disputes in any way related to . . .  the agreement, [T-Mobile's] services, devices or products . . . ." *Id*. at

---

[4] The exclusions make clear, however, that deciding arbitrability is for the Court rather than the arbitrator to decide. "'Claim' excludes [] any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration provision or any part thereof, including the Class Action Waiver and Public Injunctive Relief Waiver below (a court will decide such disputes or controversies.") Exh. 3 at p.14.

DYKEMA GOSSETT PLLC • 39577 Woolward Avenue, Suite 300, Bloomfield Hills, Michigan 48304

*7. The plaintiff argued that his TCPA claims were not subject to the arbitration clause because the wrong number calls did not relate to *his* agreement with T-Mobile and that the consent he gave to T-Mobile was ineffective against the wrong number calls he received because, under the agreement, he had only consented to receiving calls regarding *his* account. *Id*. at *8.

Following and applying Sixth Circuit precedent, the court noted that: "[w]hen trying to determine if a dispute falls within an arbitration clause '[a] proper method of analysis . . . is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.'" *Id*. (quoting *Fazio*, 340 F.3d 386, 396 (6th Cir. 2003)). The court then held that the plaintiff's TCPA claims were subject to the arbitration clause, stating:

> Clearly, the claim cannot be resolved without referring to the agreement because it will be necessary to examine [the consent clause] of the agreement to resolve both plaintiff's TCPA claim and T-Mobile's defense. In short, plaintiff's claim cannot be adequately resolved without examining the agreement between the parties. Accordingly, the dispute falls within the scope of the arbitration clause meaning that T-Mobile's motion to compel arbitration and stay this action should be granted.

*Id*. at *10. The Court did not need to, and did not, reach any conclusion about whether the consent was effective on the merits. "At this stage, the Court's duty is not to determine whether T-Mobile's defense is meritorious." *Id.* at *9, citing and

quoting *J.L. Moore, Inc. v. Settimo*, 2011 U.S. Dist. LEXIS 8479, 2011 WL 220005, at *2 (N.D. Ohio Jan. 20, 2011).

As in *Whaley,* Plaintiff's TCPA claim in this case hinges on whether or not he provided PNC with prior express written consent to make the calls and send the texts upon which his claims are based. Here, as in *Whaley*, this determination cannot be made without analyzing the consent language in the Account Agreement between PNC and Plaintiff, so this dispute necessarily arises out of or relates to the Account Agreement and thus falls within the scope of the Arbitration Provision. *See also*, *Pollak v. KeyBank, N.A.*, No. 1:19-CV-1866, 2019 U.S. Dist. LEXIS 210304, at *4 (N.D. Ohio Dec. 4, 2019) ("Because the Agreement contains an explicit clause concerning [defendants'] authority to contact Plaintiff via his cellular phone, Plaintiffs' claim necessarily arises from and relates to the Agreement and his account. Therefore the claim falls within and is subject to the broad Arbitration Provision.")

For these reasons, this Court should enforce the parties' intent and require the claims to be arbitrated. *See Simon v. Pfizer Inc*., 398 F.3d 765, 775 (6th Cir. 2005) ("When faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration."); *Watson Wyatt & Co. v. SBC Holdings, Inc*., 513 F.3d 646, 650 (6th Cir. 2008) ("[W]here, as here, an arbitration clause is broadly

13

written, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.") (quotes and citations omitted); *Huffman*, 747 F.3d at 395 ("[P]laintiffs face a difficult task in rebutting the strong presumption in favor of arbitration.").[5]

### C.    Congress Intended TCPA Claims to be Arbitrable.

Third, this Court must look to whether Congress intended for the "federal statutory claims . . . asserted . . . to be nonarbitrable." *Stout*, 228 F.3d at 714. "The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Plaintiff cannot meet this burden. Put simply: "Neither the text nor the history of the TCPA indicates that Congress intended to make TCPA claims nonarbitrable." *Treinish v. BorrowersFirst, Inc*., No. 1:17-CV-1371, 2017 U.S. Dist. LEXIS 145772, at *7 (N.D. Ohio Sep. 8, 2017); *Drozdowski v. Citibank, Inc*., 2016 U.S. Dist. LEXIS 117015, 2016 WL 4544543, at *9 (W.D. Tenn. Aug. 31, 2016) (finding that

---

[5] And even if there were any doubt as to whether Plaintiff's claims fall within the scope of the broadly-drafted Arbitration Provision (there is not), that doubt must be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019) ("[W]e have repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration.").

DYKEMA GOSSETT PLLC • 39577 Woodward Avenue, Suite 300, Bloomfield Hills, Michigan 48304

numerous courts have examined the issue of Congress's intent concerning arbitrability of TCPA claims and none have found that Congress intended TCPA claims to be nonarbitrable).

### D.      This Case Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(3).

Finally, "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout*, 228 F.3d at 714. Here, PNC seeks dismissal[6] or, in the alternative, seeks a stay.

Because the Sixth Circuit does not mandate either result, this Court has the discretion to choose between dismissing this case or issuing a stay. *See Hensel v. Cargill, Inc*., 198 F.3d 245 (published in full-text format at 1999 U.S. App. LEXIS 26600) (6th Cir. 1999) (unpublished table decision) ("litigation in which all claims are referred to arbitration *may* be dismissed") (emphasis added). However, generally, "[t]he weight of authority clearly supports *dismissal* of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (citation omitted); *see also*

---

[6] The appropriate vehicle for this Court to dismiss this case is generally under Fed. R. Civ. P. 12(b)(3) because arbitration is the proper venue for this dispute to be adjudicated, not this Court. *See Big City Small World Bakery Café, LLC v. Francis David Corp*., 265 F. Supp. 3d 750, 757 (E.D. Mich. 2017) ("Motions to compel arbitration thus concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3).").

DYKEMA GOSSETT PLLC • 39577 Woodward Avenue, Suite 300, Bloomfield Hills, Michigan 48304

*Anderson v. Crothall Healthcare Inc.*, No. 2:21-CV-10535, 2022 U.S. Dist. LEXIS 155053, at *13 (E.D. Mich. Aug. 29, 2022) (granting motion to compel and choosing to dismiss rather than stay claims).

## IV.    CONCLUSION

For the reasons stated above, PNC Bank, N.A., respectfully requests that this Court grant its Motion to Compel Arbitration, and dismiss (or in the alternative, stay) Plaintiff's Complaint in its entirety.

Date:  January 24, 2023

DYKEMA GOSSETT PLLC

By: */s/ Brett J. Natarelli*
Brett J. Natarelli
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 627-2160
bnatarelli@dykema.com

Laura C. Baucus (P56932)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304
(248) 203-0700
lbaucus@dykema.com

*Attorneys for PNC Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all counsel of record at their respective addresses as disclosed on the pleadings.

By: /s/ *Brett J. Natarelli*
Brett J. Natarelli
*Attorneys for PNC Bank, N.A.*
DYKEMA GOSSETT PLLC
bnatarelli@dykema.com

107010.000157  4885-8758-9449.4

DYKEMA GOSSETT PLLC • 39577 Woodward Avenue, Suite 300, Bloomfield Hills, Michigan 48304